UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATRICIA A. STEVENS,

                Plaintiff,

    v.                                **DECISION AND ORDER**
                                        04-CV-00567

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

    1.    Plaintiff Patricia A. Stevens challenges an Administrative Law Judge's ("ALJ") determination that she is neither entitled to disability insurance benefits ("DIB") nor eligible for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff alleges she has been disabled since May 10, 2000, because of leg problems from multiple surgeries for recurrent tumors, chronic back pain, obesity, post-traumatic stress syndrome, and depression. Plaintiff met the disability insured status requirements of the Act for purposes of entitlement to DIB from May 10, 2000 through September 31, 2001. Plaintiff's insured status for DIB is not, however, a consideration for SSI eligibility.

    2.    Plaintiff filed concurrent applications for DIB and SSI on January 24, 2002. Her applications were denied initially and on reconsideration. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Karen B. Peters on November 19, 2003, at which time Plaintiff and her attorney appeared. The ALJ considered the case *de novo*, and on February 13, 2004, issued a decision finding that the Plaintiff was not disabled. On April 23, 2004, the Appeals Council denied Plaintiff's request for review.

1

3.      On May 20, 2004, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant SSI benefits to Plaintiff.[1]  The Defendant filed an answer to Plaintiff's complaint on September 10, 2004, requesting the Court dismiss Plaintiff's complaint.  Plaintiff submitted a Memorandum of Points and Authorities in Support of Plaintiff's Request for Review of Administrative Law Judge's Unfavorable Determination of Employment Disability on October 13, 2004.  On December 16, 2004, Defendant filed a Memorandum of Law in Support of the Commissioner's purported Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[2]  After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept

---

[1] The ALJ's February 13, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although Defendant has characterized her Memorandum of Law as a "Motion for Judgment on the Pleadings," (Docket No. 10), neither the Defendant  nor the Plaintiff appear to have filed such a motion and there is no evidence in the Docket of any such motions having been filed.  Nevertheless, the Court will "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *42 U.S.C. 405(g)*

as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activeties. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.    While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.    In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 24);[3] (2) Plaintiff's obesity,

---

[3] Citations to the underlying administrative are designated as "R."

4

lipomas, back pain with a small bulging disc, depression, and anxiety are "severe" impairments within the meaning of the Act (R. at 24); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 24); (4) Plaintiff retains the residual functional capacity for sedentary work limited to tasks requiring no more than occasional climbing, balancing, stooping, kneeling, crouching, crawling, allowing a moderate reduction in concentration, a limited amount of interaction with co-workers and supervisors, and mild limitations with respect to tasks involving fine manual dexterity or repetitive motion (R. at 24); and (5) Plaintiff is unable to perform any of her past relevant work (R. at 24).  Further, the ALJ concluded that Plaintiff has no transferable skills from any past relevant work, although transferable job skills are not an issue in this case (R. at 24.)  The ALJ also found the Plaintiff's allegations regarding her limitations not totally credible (R. at 24).  Considering Plaintiff's age (24 years) (R. at 23), education (high school graduate) (R. at 23), lack of need for transferable job skills, and residual capacity to perform a range of sedentary work, the ALJ determined that the Medical-Vocational Rules directed a finding of "not disabled."  Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of her decision, February 13, 2004 (R. at 25).

    10.    Plaintiff's first challenge to the ALJ's decision is that she rejected the medical evidence provided by the treating physicians and relied instead on her impression of the Plaintiff's testimony to make her non-disabled determination.  In this regard, Plaintiff contends that the ALJ failed to properly apply the treating physician rule because she failed to give special deference to the opinions of Doctors McKenzie (R. at 316-19, 326-47), Kittur (R. at 310-11), and Hurwitz (R. at

5

312-14) that Plaintiff had little residual functional capacity at the time of their examinations of her.  Additionally, Plaintiff claims the ALJ disregarded the medical opinion of consultative examiner, Dr. Myra Shayevitz, who assessed Plaintiff as having difficulty sitting square for a prolonged period of time as well limitations in standing, walking, and stair climbing (R. at 169).

 11. According to the "treating physician's rule,"[4] the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

 12. Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2); see also

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. SS 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

13.  Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of the opinions of Doctors McKenzie, Kittur, Hurwitz, and Shayevitz.  Rather, the ALJ's decision reflects her extensive evaluation of all the medical evidence in the record (R. at 16-22) developed over Plaintiff's treatment period from May 10, 2000 through the date of her hearing before the ALJ on February 13, 2004.  The medical evidence includes treatment notes, evaluations of Plaintiff's progress, and test results (R. at 65-363). The opinions of Doctors McKenzie, Kittur, Hurwitz, and Shayevitz were inconsistent and unsupported by the record as a whole.

Plaintiff's treating physician, Dr. Errol McKenzie, filed a Medical Source Statement of Ability to Do Work Related Activities (Physical) on November 5, 2003 (R. at 316-19).  The assessment noted Plaintiff's sitting was limited to less than six hours in an eight-hour workday, and standing and walking was limited to less than two hours in an eight-hour workday.  In his assessment, the doctor did not describe the factors that supported his assessment or how he reached his conclusion (R. at 316-19).

Plaintiff's treating physician, Dr. Smita Kittur, filed a Physician's Statement for Determination of Employability (R. at 310-11) on January 6, 2003.  The statement noted the Plaintiff was limited to no work activity (R. at 310), but contained no details regarding how the physician made his determination, other than Plaintiff's complaints of back pain.

Plaintiff's treating psychiatrist, Dr. Lawrence Hurwitz, filed a Medical Assessment of Ability to Do Work-Related Activities (Mental) on April 30, 2003 (R. at 312-14).  The psychiatrist checked boxes that noted Plaintiff had poor ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stress function independently, and maintain attention and concentration (R. at 312).  The psychiatrist also checked the box indicating that Plaintiff could not understand, remember, and carry out either complex or detailed job instructions, and would have poor ability to carry out simple job instructions (R. at 313).  Dr. Hurwitz assessed Plaintiff as having no ability to behave in an emotionally stable manner, relate predictability in social situations, and demonstrate reliability (R. at 313).  The Medical Assessment gives little commentary as to how the doctor reached his conclusions.  Also, this Medical Assessment does not take into account Dr. Hurwitz's later treatment notes of May 14, 2003 where he describes Plaintiff as presenting an "even and bright spontaneous affect," and notes of May 29, 2003, where he describes Plaintiff as presenting a "mildly elevated mood and brighter more animated affect" (R. at 322-23).

Consultative examiner,  Dr. Myra Shayevitz examined Plaintiff on October 12, 2000 (R. at 154-57) and on July 5, 2001 (R. at 166-70), noting both times most areas of the examinations were normal.  However, Dr. Shayevitz concluded after the July 5, 2001 examination that Plaintiff had difficulty sitting square for any prolonged period of time, and limitations in standing, walking, and stair climbing (R. at 169).

The record in this case is inconsistent with the opinions of the four physicians above.  As set forth in the regulations, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-

8

supported.  See 20 C.F.R. § 404.1527(d)(3), 416.927(d)(3); see also Caneglosi v. Chater, No. 94-CV-2694, 1996 WL 663161, at *4 (E.D.N.Y. Nov. 5, 1996) (noting that "unsupported statements by a treating or other medical source that the claimant is disabled are not binding on the trier of fact and do not preclude a finding of nondisability").  It is equally well-settled that the less consistent an opinion is with the record as a whole, the less weight it is to be given.  See C.F.R. § 404.1527(d)(4), 416.927 (d)(4).  In this Court's view, the restrictive assessments of Doctors McKenzie, Kittur, Hurwitz, and Shayevitz were clearly inconsistent with the findings of Plaintiff's treating physicians, Doctors Henry J. Schiller, Michael K. Soeder, David Carter, Catherine Caldicott, Nicholas Fillipone, Devanand Jillapalli, John Manring, consultative examiners, Doctors Kristen Barry and Kalyani Ganesh, and state agency reviewers, Doctors Zenaida Prado, M. Apacible, and R. Finely.

By way of example, Dr. Schiller conducted a post-operative examination of Plaintiff on August 10, 2000 and determined she should be ready to return to employment by December 1, 2001 (R. at 107-08).  Another physician, Dr. Soeder, treated Plaintiff for hand pain and pain at the site of the lipoma on January 23, 2001.  Plaintiff denied any swelling or redness of the joints in her hand, or radiating pain from her hip to any area of her right leg, and the doctor noted Plaintiff's earlier complaint of back pain had resolved (R. at 94).  Dr. Soeder referred Plaintiff to a psychiatrist when she disclosed she had been raped during childhood (R. at 95).  Plaintiff's psychiatrist, Dr. Manring, treated her from March 16, 2001 until May 4, 2001, when he noted Plaintiff was "well-groomed," "more upbeat," and "significantly improved" (R. at 117).  Dr. Manring stated Plaintiff continued to exhibit symptoms of

9

post-traumatic stress, but there was little evidence of dysthymia.[5]  Id.  On June 26, 2001, Dr. Caldicott treated Plaintiff for a complaint of pain at the site of the lipoma and noted in her record that she saw Plaintiff in the clinic regularly for "problems which mostly appear to be psychosomatic" (R. at 121).  Dr. Fillipone treated Plaintiff surgically for a recurring lipoma on February 14, 2002 (R. at 218-22), and released her from further treatment on March 25, 2002, noting Plaintiff's incision had healed and opining that she was no longer disabled from a surgical standpoint (R. at 224).  Plaintiff's treating neurologist, Dr. Jillapalli, examined her on April 8, 2003, and noted her nerve conduction studies were normal and her MRI demonstrated only a mild paracentral disc protrusion at L5 (R. at 279).  Dr. Jillapalli noted the most likely source of Plaintiff's low back pain was musculoskeletal in nature without a clear radiculopathy.  Id.

Consultative psychiatric examiner, Dr. Barry, examined Plaintiff on July 7, 2001, and noted Plaintiff was dressed in a neat and casual fashion and exhibited good hygiene and grooming (R. at 178).  Her motor skills, posture, and gait were normal, speech was fluent, clear, and adequately expressive, attention and concentration were intact, and thought processes were coherent and goal-directed. Id.  The doctor noted Plaintiff had dysthymic disorder, but no evidence of hallucinations, delusions, or paranoia (R. at 179).  Dr. Barry re-examined Plaintiff on March 15, 2002 and her findings were essentially unchanged (R. at 227-31).  Consultative internal medicine examiner, Dr. Ganesh, examined Plaintiff on March 15, 2002, and found no limitations as to sitting, standing, walking, climbing, bending,

---

[5] The American Psychiatric Association characterizes Dysthymia, or Dysthymic Disorder, as a chronic depression, but with less severity than a major depression.  Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000.

squatting, or the use of her upper extremity (R. at 235). Deep tendon reflexes were physiologic and equal and no sensory deficits or muscle atrophy was noted by Dr. Ganesh (R. at 234).

State agency reviewer, Dr. Prado, reviewed Plaintiff's record on August 15, 2001 and found Plaintiff had no limitations performing her activities of daily living, mild limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, and pace (R. at 203). Dr. Prado assessed Plaintiff capable of unskilled work (R. at 189-206). State agency reviewer, Dr. Apacible, reviewed Plaintiff's record on April 4, 2002 and assessed mild restrictions on Plaintiff's activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in concentration, persistence or pace (R. at 253). State agency reviewer, Dr. Finely, reviewed Plaintiff's record on January 4, 2001 and affirmed a prior assessment completed October 30, 2000 (R. at 165) that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and sit,stand, and walk for six hours in an eight-hour workday (R. at 160).

The medical opinions of plaintiff's treating physicians, Doctors McKenzie, Kittur, and Hurwitz, as well as consultative examiner, Dr. Shayevitz, were considered by the ALJ along with the medical opinions of Plaintiff's other treating physicians, consultative examiners, and state agency reviewers. The ALJ recognized "some divergence of opinion" about Plaintiff's capacity for meaningful vocational activity, but considered unrefuted objective findings, rather than Plaintiff's self-reported symptoms, as the most reasonable measure of determining Plaintiff's residual functional capacity (R. at 22). The ALJ did, however, afford some weight to

Plaintiff's subjective complaints to ensure Plaintiff's residual functional capacity was reduced to sedentary. Id.

Based on the foregoing, this Court finds that it was not improper for the ALJ to consider the medical assessments of Doctors McKenzie, Kittur, Hurwitz, and Shayevitz, but ultimately predicate her disability determination on the objective medical results and the consistent medical opinions contained in the record. It is the sole responsibility of the ALJ to weigh all of the medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971). Under the circumstances presented in this case, it cannot be said that the ALJ disregarded all medical evidence from Plaintiff's treating physicians and instead relied on her impression of the Plaintiff's testimony. Rather, this Court finds that the ALJ afforded less weight to the assessments of Doctors McKenzie, Kittur, Hurwitz, and Shayevitz, which were based largely on Plaintiff's subjective complaints, than she afforded the medical opinions, which were consistent with the objective clinical findings in the record.

14. The Plaintiff's second argument is that the ALJ improperly concluded Plaintiff retained the residual functional capacity to perform a significant range of sedentary work (R. at 24). Plaintiff specifically cites the restrictive assessments of Dr. McKenzie (R. 316-19) and Dr. Shayevitz (R. at 169) that Plaintiff could sit less than six hours in an eight-hour workday. In this case, the ALJ sought out and relied on vocational expert evidence to assist her in determining Plaintiff's capability to do other work less than a full range of sedentary work. See SSR 96-9p. The ALJ denied benefits at step five in the five-step sequential evaluation process based on vocational expert testimony that there were jobs in the national economy Plaintiff

could perform given her limited residual functional capacity (R. at 25-24, 409), her age, educational background, and work experience (R. at 23). The jobs described by the vocational expert that fit Plaintiff's physical limitations did not require Plaintiff to sit for six hours in an eight-hour workday, but would allow Plaintiff to stand or sit at will, work alone with minimal interaction with co-workers and supervisors, and would be simple, repetitive work (R. at 409-10). The jobs named by the vocational expert would also be compatible with Plaintiff's moderate reduction in concentration, mild limitation on the use of her hands, and restrictions on climbing, balancing, kneeling, crouching, crawling, and stooping (R. at 408-09). Accordingly, this Court finds the ALJ properly relied on vocational expert testimony, and factors including Plaintiff's age, educational background, and residual functional capacity in reaching a finding of "not disabled" within the framework of the Medical Vocational Rule 201.27.

15.     The Plaintiff's third argument is that the ALJ did not properly consider Plaintiff's reports of pain. The ALJ considered Plaintiff's subjective complaints of pain and afforded the complaints some weight in finding that Plaintiff was not disabled and retained the residual functional capacity for a limited range of sedentary work (R. at 22-24). However, the ALJ noted Plaintiff's reported symptoms were not consistent with objective medical evidence and other evidence. See C.F.R. § 404.1529 and 416.949, SSR 96-7p. Specifically, the ALJ pointed out Plaintiff's claims that she had increased pain with prolonged sitting, yet admitted to a daily routine of sitting while she played cards, watched television, listened to radio programming, and entertained her friend (R. at 18). Plaintiff reported she lived alone, shopped, did laundry, and took care of her personal needs (R at 88, 398). Consultative examiner Dr. Shayevitz noted Plaintiff was able to mount and dismount

13

an examination table without assistance, dress and undress without assistance, rise from a seated position, show full range of motion and motor strength in all extremities, and radiology reports showed no structural abnormalities (R. at 154-57). Other physicians reported Plaintiff's back pain had resolved (R. at 94), limited EMG results (R. at 359), normal nerve conduction results (R. at 359-62), and MRI results showing a very mild disc protrusion at L5 (R. 283).  Consultative examiner Dr. Jillapalli stated the likely etiology of Plaintiff's was musculoskeletal in nature without a clear radiculopathy (R. at 279).  Treating physician Dr. Caldicott noted Plaintiff's problems mostly appeared to be psychosomatic (R. at 121).

In sum, the record in this case does not substantiate Plaintiff's claims of consistent and disabling pain.  Accordingly, the ALJ exercised her discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment regarding the extent of her pain based on the objective medical findings and other evidence.  See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 186 (2d Cir. 1984).

16.    After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to this Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and consultative examiner, and afforded Plaintiff's subjective claims of pain an appropriate weight when rendering her decision that Plaintiff is not disabled.  This Court finds no reversible error and further finding that substantial evidence supports the ALJ's decision, this Court will, upon the pleadings and transcript of the record, affirm the decision of the ALJ under

the substantial evidence rule, grant judgment to Defendant, and order that Plaintiff's case be dismissed. Accordingly,

IT IS HEREBY ORDERED, that the decision of the ALJ is AFFIRMED and judgment for Defendant is GRANTED.

FURTHER, that Plaintiff's case is DISMISSED, and

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  February 12, 2007
        Syracuse, New York

_____
Victor E. Bianchini
United States Magistrate Judge